**ALPHA BETA COMPANY,**
Plaintiff-Appellant,

v.

**RETAIL STORE EMPLOYEES UNION,
LOCAL 428 AFL-CIO, chartered by the
Retail Clerks International Association,
AFL-CIO, Defendant-Appellee.**

No. 80–4351.

United States Court of Appeals,
Ninth Circuit.

Argued and Submitted May 14, 1981.

Decided March 19, 1982.

Patrick W. Jordan, San Francisco, Cal., argued, for plaintiff-appellant; Henry R. Telfeian, San Francisco, Cal., on brief.

Nancy Van Zwalenburg, San Francisco, Cal., argued, for defendant-appellee; Francis J. McTernan, Garry, Dreygus, McTernan, Brotsky, Stender, Herndon & Walsh, San Francisco, Cal., on brief.

Before HUG and POOLE, Circuit Judges, and WYATT *, District Judge.

* The Honorable Inzer B. Wyatt, Senior United States District Judge for the Southern District of New York, sitting by designation.

HUG, Circuit Judge:

Alpha Beta appeals the denial of its petition to compel the Retail Store Employees Union, Local 428 AFL–CIO (the Union) to arbitrate the interpretation and application of provisions of their 1977 and 1980 collective bargaining agreements relating to sympathy strikes. This appeal raises the issues of (1) whether Alpha Beta can compel arbitration of issues relating to a dispute that was settled under the 1977 agreement, and (2) whether a dispute exists under the 1980 agreement enabling Alpha Beta to compel arbitration to interpret the sympathy strike clause in that agreement.

## I

### FACTS

The Union and Alpha Beta entered into a collective bargaining agreement effective January 1, 1977 through December 31, 1979 (1977 agreement), which contained a no-strike provision and also a provision that permitted the employees to refuse to pass through a picket line that was properly sanctioned by the appropriate labor council. The parties subsequently entered into an agreement, effective January 1, 1980 through February 28, 1983 (1980 agreement), which contained the same provisions.

During the summer of 1978, various Teamsters Union locals struck Alpha Beta and other supermarkets. Sporadic picketing occurred at Alpha Beta's retail stores. In support of the strike, about twenty Retail Store Employees Union members did not report to work. Section 17 of the 1977 and 1980 collective bargaining agreements in the parts here relevant provided:

17.1 During the life of this Agreement the Union agrees not to engage in any strike or stoppage of work as long as the Employer has not committed an act held by the Adjustment Board or Arbitrator to be in violation of this Agreement, or the Employer is not in clear violation of a provision of the Agreement where no question of interpretation is involved.

17.3 Refusal of any employee covered by the terms of this Agreement to pass through any picket line which has been sanctioned by the Central Labor Council of proper jurisdiction and/or the Retail Clerks Bay Area Council shall not constitute a violation of this Agreement.

Alpha Beta fired the twenty employees on the grounds that their actions violated the no-strike clause of section 17.1 of the 1977 agreement. It contended the employees' actions were not justified by section 17.3 because there were no picket lines at the stores where they were working.

The Union then invoked the labor contract's grievance procedure.[1] Following the adjustment meeting held pursuant to the collective bargaining agreement, the Union and Alpha Beta entered into a settlement agreement in October 1978, under which the employees were reinstated without back pay. The agreement provided that it would be "final and binding." However, a few days thereafter a number of the reinstated employees individually filed unfair labor practice charges with the NLRB requesting back pay. An NLRB administrative complaint was issued against Alpha Beta, alleging that the employees were terminated unlawfully; this matter is currently pending.

On May 9, 1980 Richard D. Hinshaw, the director of labor relations for Alpha Beta, sent a letter to the Union contending that a dispute existed and seeking to invoke the dispute resolution procedure. In essence, his letter stated that a dispute existed be-

1. 18.2 DISCIPLINARY GRIEVANCES: Pursuant to Section 3 of this Agreement, any employee who feels he has been unjustly discharged or suspended shall file a grievance with the Union and thereafter within ten (10) business days of notice of the disciplinary action, the Union, if it desires to proceed with the grievance, shall notify the Employer or its representative that an Adjustment Board should be convened to hear the grievance. Within fifteen (15) business days (Monday-Friday, holidays excluded) thereafter, the Union and the Employer shall meet as a Board of Adjustment, consisting of two representatives of the Employer and two representatives of the Union, in an effort to settle the matter. This time limit may be extended by mutual agreement of the parties. If the matter is not adjusted and is impassed, the Union, if it so elects, within fifteen (15) business days following the meeting of the Board of Adjustment, shall proceed to arbitration. . . .

cause he was informed that the Union was going to take the position that section 17 of the agreement permitted employees to engage in a sympathy strike, even in the absence of pickets in front of the store. He indicated that the prior settlement had been reached with the understanding that the central issue was whether there were pickets in front of the store, not whether the sympathy strike was permissible in the absence of pickets. He stated that a dispute existed because of this difference in interpretation of section 17 and also that a further dispute existed as to whether the Union's change in position constituted a breach of the settlement agreement. The letter suggested that the parties waive the preliminary dispute resolution procedures and proceed to arbitration pursuant to section 18.[2] The Union declined to engage in the preliminary procedures or to submit the matter to arbitration.

Alpha Beta then petitioned the district court to compel arbitration. The district court denied the petition, finding

> no compelling reason why this matter ought to be arbitrated. To the extent there has heretofore been a dispute, it has been arbitrated; there is no pending dispute that requires arbitration. To the extent that there are certain differences that exist and that are at issue before the NLRB, they are not matters directly arising direct out of the contract ....

The district court, in effect, held that there is no dispute as defined by section 18 of the collective bargaining agreement and thus the Union is not required to arbitrate.

**2.** Section 18 of both the 1977 and 1980 agreements provides in part:

SECTION 18. ADJUSTMENT AND ARBITRATION OF DISPUTES
18.1 For the purpose of this Agreement, a grievance is a dispute, difference of opinion between the parties, and grievances of employees involving or arising out of the meaning, interpretation, application or alleged violation of this Agreement, including the arbitrability of all such matters. All grievances as defined are to be processed in accordance with the terms of this section.

   ....

18.3 INTERPRETATION OR APPLICATION DISPUTES:

II

## ANALYSIS

One of the principal reasons that Alpha Beta seeks arbitration is that it hopes to obtain a favorable interpretation of section 17 of the 1977 agreement that could be utilized in the NLRB proceeding. Alpha Beta clearly would have been entitled to proceed to arbitration to resolve this question of interpretation as applied to the employees, had the dispute not been settled. Alpha Beta would not have been precluded from proceeding to arbitration under the 1977 contract, even though an unfair labor practice proceeding involving the same issue was pending before the NLRB. *Smith v. Evening News Ass'n*, 371 U.S. 195, 83 S.Ct. 267, 9 L.Ed.2d 246 (1962). In fact, the NLRB, though not bound by an arbitrator's decision, frequently will defer to a decision of an arbitrator concerning the interpretation of a contractual provision. *Douglas Aircraft Co. v. NLRB*, 609 F.2d 352, 353 (9th Cir. 1979).

However, that dispute was settled between the Union and Alpha Beta under section 18.2 of the 1977 agreement.[3] A written settlement agreement was executed by the Union and Alpha Beta; that settlement agreement contained no provision for arbitration. The employees individually are asserting their independent statutory rights before the NLRB. The Union is not a party in that proceeding. If the Union warranted that no such proceedings would be brought or if the Union's actions in connection with that proceeding have, in some way, breached the settlement agree-

> Disputes as to the interpretation or application of the agreement shall be taken up by the party asserting it with the other party within twenty (20) business days of the date the asserting party has knowledge thereof
>   ....
>   The parties shall have fifteen (15) business days in which to process and amicably adjust the dispute ....
> If by the end of the period for amicable adjustment no resolution has been made of the dispute, there shall be fifteen (15) business days for the asserting party to request arbitration by an impartial arbitrator.
>   ...

**3.** See footnote 1.

ment, Alpha Beta's remedy would be to bring an action for breach of the settlement agreement, not to seek arbitration of the underlying dispute.

Alpha Beta also seeks an interpretation by arbitration of section 17 for application in the future. The provisions of section 17 are identical in both the 1977 and 1980 agreements. There would be no basis for Alpha Beta to seek an interpretation by arbitration of a provision of the 1977 agreement, which has expired. Any dispute that existed under that agreement was settled, and any prospective application of a provision of the expired agreement would be moot. The issue, therefore, is narrowed to the question of whether Alpha Beta can compel arbitration to obtain an interpretation of section 17 of the 1980 agreement.

■■■ Arbitration is a matter of contract, and a party cannot be required to arbitrate an issue when it has not agreed to do so. *John Wiley & Sons v. Livingston,* 376 U.S. 543, 547, 84 S.Ct. 909, 912, 11 L.Ed.2d 898 (1964); *United Steelworkers of America v. Warrior Gulf Navigation Co.,* 363 U.S. 574, 582, 80 S.Ct. 1347, 1352, 4 L.Ed.2d 1409 (1960). The question whether a particular dispute is subject to arbitration is normally a question for the courts to decide. However, the parties may agree to submit even this question to arbitration. Upon a clear demonstration that this was the parties' purpose, the court must submit the preliminary question of a dispute's arbitrability to arbitration. *Id.* at 583 n.7, 80 S.Ct. at 1353 n.7. *Amalgamated Clothing and Textile Workers Union v. Ratner Corp.,* 602 F.2d 1363, 1371 (9th Cir. 1979).

■ In the collective bargaining agreement at issue here, the arbitration clause is very broad. It provides that disputes "involving or arising out of the meaning, interpretation, application or alleged violation of this Agreement, including the arbitrability of all such matters," be referred to arbitration. However, even though the parties have agreed to submit the question of the arbitrability of a dispute to arbitration, Alpha Beta must establish that a dispute exists.

The record made before the district court by the parties is sparse. The only evidence produced by Alpha Beta at the trial was an affidavit of Richard D. Hinshaw, its director of labor relations, to which is attached his letter of May 9, 1980. In that letter he states:

> I am now informed that Local 428 is going to take the position that the no-strike language contained in Section 17 of the Agreement does not prohibit employees from engaging in sympathy strikes in the absence of picketing. Accordingly, there now exists a dispute as to the interpretation and application of that contract clause.

No evidence before the district court establishes that the Union has, in fact, taken any position on the interpretation of section 17 of the 1980 agreement, nor, for that matter, that it has been requested by Alpha Beta to take a position and refused to do so. The evidence only reveals that the Union contends that no dispute exists requiring arbitration. We conclude that Alpha Beta has failed to establish that a dispute exists. The question of whether Alpha Beta would be entitled, under this broad arbitration clause, to compel arbitration of the meaning of a provision of the contract, had it established that the parties took opposing views, or even had it established that the Union declined to take a position, is not before us on this record. Alpha Beta failed to establish either.

The judgment of the district court is AFFIRMED.