771 F.2d 829
 120 L.R.R.M. (BNA) 2216, 103 Lab.Cas. P 11,668
 Lonnie L. ADKINS; Philip Peterson; D.W. Thompson; G.R.
Gibson; B.W. Payne; J.E. Smith; C.R. Mowbray; J.H.
Thompson; J.J. Haskins; G.R. Wertz; R.E. Cooper; W.H.
Morton; A.L. Hartwell; A.F. Cameresi; B.L. Fuller and
L.W. Via, on behalf of themselves and all others similarly
situated, Appellees,
v.
TIMES-WORLD CORPORATION, Appellant,
and
Roanoke Typographical Union # 60 and International
Typographical Union, Defendants.
 No. 83-1882.
 United States Court of Appeals,
Fourth Circuit.
 Argued May 7, 1985.
Decided Aug. 23, 1985.
 
 D. Gerald Coker, Atlanta, Ga. (Paul D. Jones, Ford & Harrison, Atlanta, Ga., on brief), for appellant.
 T. Keister Greer, G. Carter Greer, Rocky Mount, Va. (Greer & Greer, Rocky Mount, Va., on brief), for appellees.
 Before PHILLIPS and SPROUSE, Circuit Judges, and WARD, United States District Judge for the Middle District of North Carolina, sitting by designation.
 SPROUSE, Circuit Judge:
 
 
 1
 Lonnie L. Adkins and fifteen other journeymen printers brought this action against Times-World Corporation, Roanoke Typographical Union Local No. 60 (Local), and the International Typographical Union (International) under section 301 of the Labor Management Relations Act of 1947, 29 U.S.C. Sec. 185 (1982). Times-World is a newspaper publisher in Roanoke, Virginia, and is a party to a collective bargaining agreement with the Local of which the printers are members. The printers seek $42 million in damages, contending that Times-World violated a contractual agreement to provide them with lifetime employment. The printers also contend that the Local and the International were guilty of unfair representation because they did not adequately represent the printers in the pursuit of this action. Times-World and the unions contend that the issues involved in this action are all subject to arbitration and that this action cannot be maintained in the district court until arbitration proceedings have been exhausted. The trial court disagreed and, upon the printers' motion, issued an order staying arbitration proceedings pending pursuit of the district court action. Times-World and the unions appeal from the trial court's order staying arbitration. We reverse.
 
 
 2
 Times-World and the Local have entered into a collective bargaining agreement on four separate occasions over the past ten years. The threat of automation to job security became a primary concern of the printers in 1975. Consequently, at the completion of the 1975 collective bargaining agreement Times-World and the Local agreed to an addendum, guaranteeing job security until retirement age to certain journeymen printers employed in the composing room of Times-World. The guarantee was conditioned on the maintenance of certain levels of advertising revenue by Times-World. The addendum was negotiated and reexecuted in 1976, 1979, and 1983 in conjunction with each subsequent collective bargaining agreement.
 
 
 3
 This dispute had its genesis in Times-World's action laying off three printers, Lonnie L. Adkins, Jonathan Willis, and John Synan. It was apparent in late 1982 that a reduction in the number of printers at Times-World was necessary. During negotiations for the 1983 agreement, Times-World and the Local agreed to a reduction in force program, under which Times-World offered to pay each of any five printers who voluntarily terminated their employment a lump sum severance based on the number of months remaining until normal retirement. Times-World publisher Walter Rugaber wrote Local president Willis on February 7, 1983, notifying him that there had been a continuing decline in full-run ROP (run of the press) advertising and extending until February 11 the deadline for employees to take advantage of the severance pay provision. Apparently, Times-World did not achieve the desired reduction in force, and on February 11 it notified Adkins, Willis, and Synan that they would be laid off effective February 27.
 
 
 4
 On February 14 the Local filed a grievance concerning the layoff of these three printers, contending that the layoffs breached the addendum to the contract and invoking the grievance and arbitration provisions of the collective bargaining agreement. At the Local's request, the International assigned a representative to assist with the arbitration. The Local subsequently requested that the unsettled grievance be advanced to the Joint Standing Committee as provided in the agreement, and Times-World agreed. The parties attempted to settle the layoff grievances but were unsuccessful, and on March 16 Times-World and the Local agreed that the matter should go to binding arbitration as provided in the collective bargaining agreement. The parties selected an arbitrator and scheduled a hearing for June 23. The Local subsequently voted at a meeting in late March to rescind its agreement to arbitrate the dispute. At the next meeting in April, however, the Local reversed itself and voted to submit the layoff dispute to arbitration.
 
 
 5
 Meanwhile, this action was filed in district court on March 15. Times-World filed a motion to dismiss or alternatively for summary judgment, contending that the dispute was subject to mandatory arbitration. The printers filed a motion on June 16 to stay arbitration proceedings. The district court denied Times-World's motion to dismiss and granted the printers' motion to stay arbitration until its further order. In the meantime, the printers amended their complaint, adding both unions as defendants. Times-World and the unions appeal the district court's order staying arbitration.
 
 
 6
 All the parties candidly acknowledge the well-recognized policy of federal labor law favoring arbitration of labor disputes. The Supreme Court in the Steelworkers Trilogy made clear that, except for matters specifically excluded from arbitration in the collective bargaining agreement, all questions on which the parties disagree must be submitted to arbitration. United Steelworkers v. Enterprise Wheel & Car Corp., 363 U.S. 593, 80 S.Ct. 1358, 4 L.Ed.2d 1424 (1960); United Steelworkers of America v. Warrior & Gulf Navigation Co., 363 U.S. 574, 80 S.Ct. 1347, 4 L.Ed.2d 1409 (1960); United Steelworkers of America v. American Manufacturing Co., 363 U.S. 564, 80 S.Ct. 1343, 4 L.Ed.2d 1403 (1960). The collective bargaining agreement in the instant case does not specifically exclude from arbitration the guarantee of job security contained in the addendum. Section 2-02 of the agreement provides:
 
 
 7
 This Agreement alone shall govern relations between the parties on all subjects concerning which any provision is made in this Agreement, and any dispute involving any such subjects shall be determined in accordance with Section 8 of this agreement.
 
 Section 8-03, in turn, provides:
 
 8
 In the event a settlement is not reached as provided in Section 8-01 or 8-02 of this Agreement [relating to the initial processing of grievances], all disputes which may arise as to the interpretation and application to be placed on any clause herein or alleged violation thereof shall be referred to a Joint Standing Committee of four members, two to be named by Employer and two by the Union.... The Joint Standing Committee shall meet within ten days from the day on which notice is given in writing that a meeting is desired and shall proceed forthwith to settle any question before it. Such decision shall be final and binding.
 
 
 9
 Section 8-04 of the agreement then provides that if the Joint Standing Committee is unable to resolve the grievance, the matter can be referred to an arbitration panel for final decision. Thus, the principal issue on this appeal is whether the addendum is a part of the collective bargaining agreement. If so, the layoff dispute is subject to the arbitration clause, which requires that all disputes be arbitrated. If, on the other hand, the addendum is not a part of the principal agreement, the layoff dispute is not subject to mandatory arbitration.
 
 
 10
 Times-World and the unions contend that the addendum is part of the collective bargaining agreement and, therefore, that any dispute arising from an alleged violation of the addendum is subject to the grievance and arbitration provisions of the collective agreement and that the district court is without authority to entertain this action unless and until arbitration procedures are exhausted. The printers raise several issues but concede that a finding that the addendum is part of the collective bargaining agreement would resolve all the issues against them and require them to resort to arbitration. Because we conclude that the addendum is part of the collective bargaining agreement, it is unnecessary to consider the subsidiary issues raised by the printers.
 
 
 11
 Our conclusion that the body of the collective bargaining agreement and the addendum are part of the same contract rests on the language of the addendum, the negotiation history of the addendum, and the parties' conduct indicating their understanding that the two documents represent one composite group of obligations. The language of the addenda varied little from contract to contract. The current addendum provides:
 
 
 12
 Notwithstanding anything to the contrary in the aforesaid agreement:The Employer intends to continue utilizing new newspaper production equipment, techniques and processes. Accordingly, the union will not object to unrestricted introduction of new and automated equipment, to unrestricted location of such equipment, to changes of any procedures, or to the removal from the composing room of any such equipment or any work, it being understood and agreed that some work now done in the composing room of Employer may in the future be performed elsewhere. The union shall have no jurisdiction over jobs, work or equipment which may be transferred outside the composing room.
 
 
 13
 The Employer hereby guarantees to the journeymen whose names appear in priority order on exhibit A hereto that each of them shall have, until normal retirement age, lifetime job security within the composing room and that no layoff or reduction in force shall occur except as a result of normal attrition or unless Employer shall determine that its business has been adversely affected by reduced advertising linage. Normal attrition shall include death, retirement, resignation, voluntary transfer, and discharge for cause.
 
 
 14
 Exhibit A contained a list of the protected employees and was appended to the addendum. Names were added to the list in successive agreements.[1]
 
 
 15
 The very title of the second instrument--addendum--suggests an inseparable link to another instrument, specifically the collective bargaining agreement to which it refers in its first sentence. The addendum relates to a major concern of the principal agreement, namely employment and layoff procedures for specific employees. Moreover, it commences "[n]otwithstanding anything to the contrary in the aforesaid agreement"--language which weaves the purposes of the two instruments even closer.
 
 
 16
 A review of the negotiation history of the parties strengthens the impression that the two instruments constituted a unitary agreement. The addendum had no existence separate from the collective bargaining agreement. It was first executed upon completion of the 1975 collective bargaining agreement. Thereafter, the addendum was reexecuted in 1976, 1979, and 1983 upon each renewal of the collective bargaining agreement.
 
 
 17
 Finally, it is obvious from the conduct of the plaintiffs involved in the layoff that they understood the addendum to be a part of the collective bargaining agreement and treated it as such. Three days after Adkins, Willis, and Synan received their layoff notices, the Local filed a grievance utilizing the grievance provisions of the collective bargaining agreement. The Local, under the advice of the International, insisted on proceeding with the arbitration, admittedly over the objection of some members. Members of the Local finally agreed in their April meeting that it should be submitted to arbitration. It is significant that during these times one of the laid off printers, Willis, was president of the Local and, in his letter of February 14 to Rugaber, filed a grievance concerning the layoffs, invoking the grievance and arbitration provisions of the agreement.
 
 
 18
 It is a universally accepted rule that where a collective bargaining agreement contains arbitration provisions an employee may not maintain a section 301[2] action for the resolution of a dispute subject to those provisions unless the arbitration procedures have been exhausted. Hines v. Anchor Motor Freight, Inc., 424 U.S. 554, 96 S.Ct. 1048, 47 L.Ed.2d 231 (1976). Concluding that the layoff disputes arising under the addendum are subject to the arbitration clause, we reverse the judgment of the district court and remand the case with instructions that the stay of arbitration proceedings be vacated and that the court take such other actions as may be appropriate in view of our holding.
 
 
 19
 REVERSED AND REMANDED, WITH INSTRUCTIONS.
 
 
 
 [1]
 At the time of this action, all the plaintiffs in this case were listed in Exhibit A
 
 
 [2]
 Section 301 of the Labor Management Relations Act of 1947, 29 U.S.C. Sec. 185 (1982)