**GRAHAM COUNTY ELECTRIC COOPERATIVE, INC.,**
Plaintiff,

v.

**LOCAL UNION NO. 287, INTERNATIONAL BROTHERHOOD OF ELECTRICAL WORKERS, AFL–CIO, Defendant.**

No. CV 04–527–TUC–CKJ.

United States District Court,
D. Arizona.

July 12, 2005.

Charles L. Fine, John Greg Coulter, Littler Mendelson PC, Phoenix, AZ, for Plaintiff.

Nicholas Jason Enoch, Lubin & Enoch PC, Phoenix, AZ, for Defendant.

**ORDER**

JORGENSON, District Judge.

Pending before the Court is Plaintiff's (the "Cooperative") Motion for Summary Judgment and Defendant's (the "Union") Cross–Motion for Summary Judgment. For the reasons stated below, the Cooperative's motion is denied, and the Union's motion is granted.

## I. *Standard of Review for a Motion for Summary Judgment*

Summary judgment is appropriate where "there is no genuine issue as to any material fact." Fed.R.Civ.P. 56(c). A genuine issue exists if "the evidence is such that a reasonable jury could return a verdict for the nonmoving party," and material facts are those "that might affect the outcome of the suit under the governing law." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248, 106 S.Ct. 2505, 91 L.Ed.2d 202 (1986). A fact is "material" if, under the applicable substantive law, it is "essential to the proper disposition of the claim." *Id.* An issue of fact is "genuine" if "there is sufficient evidence on each side so that a rational trier of fact could resolve the issue either way." *Id.* Thus, the "mere scintilla of evidence" in support of the nonmoving party's claim is insufficient to defeat summary judgment. *Id.* at 252, 106 S.Ct. 2505. However, in evaluating a motion for summary judgment, "the evidence of the nonmoving party is to be believed, and all justifiable inferences are to be drawn in his favor." *Id.* at 255, 106 S.Ct. 2505.

## II. *Background*

This case arises out of an employment dispute between the Cooperative and one of its employees, Mark Curley, who is represented by the Union. The Cooperative consists of two utilities which supplies gas and water to Graham County. The Union represents employees who work for the Cooperative. The Union and the Cooperative have been operating under various collective bargaining agreements for many years. The most recent collective bargaining agreement ("CBA") between the parties was entered into in 2001 and is the CBA at issue in this case.

Curley began working for the Cooperative in 1990, and was normally assigned to a two-ton truck trailer and backhoe; in light of these duties, Curley was required to have a Commercial Driver's License ("CDL"). In December of 2003, Curley was charged with a DUI which resulted in the suspension of his driver's license and CDL for 90 days; Curley was entitled to a work permit after the first 30 days of the suspension.

The Cooperative had enacted certain policies pertaining to the revocation of an employees CDL. In 1994, the Cooperative instituted Policy E–5 which states in relevant part that the "Cooperative reserves the right to determine the employment status of any employee whose employment status is substantially impaired due to suspension ... of the employee's [CDL]." *See* Cooperative's MSJ at Ex. C. In 2002, the Cooperative provided written notice to employees that Policy E–5 was revised effective November 1, 2002 such that employees would "bear the burden of the 30–day [suspension of their CDL due to a DUI] by being required to take vacation days through the suspension period. If the employee runs out of vacation days, the remainder of days off will be leave of absence without pay." *Id.*[1] The Cooperative admits that Policy E–5 and the notice revising Policy E–5 were never part of the CBA at issue in this case.

Pursuant to the notice revising Policy E–5, Curley was suspended for 30 days which commenced on January 8, 2004 and ended on February 5, 2004. On January 15, 2004, the Union filed a grievance on Curley's behalf arguing that his suspension violated the CBA as the suspension was unjust and improper thereby entitling Curley to backpay and other benefits; the Union sought arbitration of the dispute.

---

**1.** Prior to this notice, employees were allowed to continue working for the Cooperative de-

spite a DUI resulting in a suspension of their CDLs.

In addition to Policy E–5 and the related notice, Article VII and Article VIII of the CBA are particularly relevant in resolving this dispute.

Article VII, Section 1 states:

> A grievance is defined as any dispute, controversy or disagreement as to the application or interpretation of any provision of this Agreement and any complaint by an employee alleging unjust treatment by a Supervisor. Any employee, the Union or the Cooperative may present a grievance.

Article VII, Section 6 states in relevant part:

> The arbitrator shall hear the submitted grievance ... and shall render a decision .... after the conclusion of the last hearing ... The decision shall be final and binding on all parties.
>
> The arbitrator shall have the jurisdiction and authority only to interpret, apply or determine compliance with the provisions of this Agreement. The arbitrator shall not have the jurisdiction or authority to alter, change, modify, add or subtract from this Agreement or any provision thereof, or to determine any provision to be incorporated in a new agreement or an extension or a renewal of this Agreement.

Article VIII, Section 1 states in relevant part:

> The management of the Cooperative ... including the right to hire, suspend or discharge for proper cause ... together with the right to relieve an employee from duty because of lack of work or other legitimate reason, is vested exclusively in the Cooperative, except as the same may be expressly affect[ed] by any of the provisions of this Agreement.

*See* Cooperative's MSJ at Ex. G.

Shortly after the dispute was submitted to arbitration, an arbitrator (William S. Rule) was mutually selected by the parties through the Federal Mediation and Conciliation Service. The arbitrator then presided over a trial type hearing whereby both parties were provided a full opportunity to examine and cross-examine witnesses under oath, submit evidence, and argue their positions. Thereafter, the arbitrator found that the 30 day suspension was too severe and reduced the suspension to one week thereby entitling Curley to backpay and missed benefits.

### III. *Discussion*

■ As both parties recognize, the standard for reviewing an arbitration award is "both limited and highly deferential." *Poweragent v. Electronic Data Systems Corp.*, 358 F.3d 1187, 1193 (9th Cir. 2004). Generally, an arbitration award may be vacated only if it is "completely irrational" or if it "constitutes manifest disregard of the law." *Coutee v. Barington Capital Group*, 336 F.3d 1128, 1132 (9th Cir.2003). Thus, "nearly unparalleled" deference is given to labor arbitration awards. *See Grammer v. Artists Agency*, 287 F.3d 886, 890 (9th Cir.2002); *Garvey v. Roberts*, 203 F.3d 580, 588 (9th Cir.2000)(review of arbitration awards is "extremely limited").

■ There are very some narrow limits to this extremely deferential standard. As relevant to this case, the Cooperative correctly argues, and the Union concedes, that an arbitration award must be vacated where the arbitrator's decision fails to "draw its essence from the contract and cannot simply reflect the arbitrator's own notions of industrial justice." *United Paperworkers Intern. Union, AFL–CIO v. Misco, Inc.*, 484 U.S. 29, 37–38, 108 S.Ct. 364, 98 L.Ed.2d 286 (1987). This is essentially the only real dispute in this case. Thus, despite the extremely deferential standard of review, the Cooperative argues that the labor arbitration award at issue

must be vacated because the arbitrator exceeded his authority because his decision fails to draw its essence from the CBA. *See id.* Nonetheless, in light of the "unparalleled degree of deference" given to labor arbitration awards, courts must confirm a labor arbitration award "as long as the arbitrator even arguably construed or applied the contract." *Teamsters Local Union 58 v. Boc Gases,* 249 F.3d 1089, 1093 (9th Cir.2001)(internal quotes and citation omitted); *Carpenters Pension Trust Fund v. Underground Constr. Co.,* 31 F.3d 776, 778 (9th Cir.1994)(factual findings made by an arbitrator are presumed correct); *Association of Western Pulp & Paper Workers, Local 78 v. Rexam Graphic, Inc.,* 221 F.3d 1085, 1091 (9th Cir. 2000)("broad deference" must be given to labor arbitration awards); *Hawaii Teamsters and Allied Workers Union, Local 996 v. United Parcel Service,* 241 F.3d 1177, 1180–1181 (9th Cir.2001)(review of labor arbitration awards is "extremely deferential").

As explained by the Supreme Court, there are various policy reasons supporting the extreme deference given to labor arbitration awards:

> The reasons for insulating arbitral decisions from judicial review are grounded in the federal statutes regulating labor-management relations. These statutes reflect a decided preference for private settlement of labor disputes without the intervention of government ... Because the parties have contracted to have disputes settled by an arbitrator chosen by them rather than by a judge, it is the arbitrator's view of the facts and of the meaning of the contract that they have agreed to accept. Courts thus do not sit to hear claims of factual or legal error by an arbitrator as an appellate court does in reviewing decisions of lower courts. To resolve disputes about the application of a collective-bargaining agreement, an arbitrator must find facts and a court may not reject those findings simply because it disagrees with them. The same is true of the arbitrator's interpretation of the contract. The arbitrator may not ignore the plain language of the contract; but the parties having authorized the arbitrator to give meaning to the language of the agreement, a court should not reject an award on the ground that the arbitrator misread the contract ... So, too, where it is contemplated that the arbitrator will determine remedies for contract violations that he finds, courts have no authority to disagree with his honest judgment in that respect. If the courts were free to intervene on these grounds, the speedy resolution of grievances by private mechanisms would be greatly undermined. Furthermore, it must be remembered that grievance and arbitration procedures are part and parcel of the ongoing process of collective bargaining. It is through these processes that the supplementary rules of the plant are established. As the Court has said, the arbitrator's award settling a dispute with respect to the interpretation or application of a labor agreement must draw its essence from the contract and cannot simply reflect the arbitrator's own notions of industrial justice. But as long as the arbitrator is even arguably construing or applying the contract and acting within the scope of his authority, that a court is convinced he committed serious error does not suffice to overturn his decision.

*United Paperworkers Intern. Union, AFL–CIO v. Misco, Inc.,* 484 U.S. 29, 37–38, 108 S.Ct. 364, 98 L.Ed.2d 286 (1987).

■ In light of these extremely deferential standards, the Court finds that the labor arbitration award must be confirmed. As pertinent to this case, the arbitrator's main analysis of the dispute appears on pages eight and nine of his decision. *See* Cooperative's MSJ at Ex. I. In relevant

part, the arbitrator found that the past practice of allowing Cooperative employee's to work through suspensions was no longer applicable in Curley's case in light of the written notice of the revisions to Policy E–5 in November of 2002. *Id.* at 8. In addition, the arbitrator found that the Cooperative's written notice revising the policy was reasonable[2] as the Cooperative wanted to discourage drunk driving and minimize any disruption to the workplace caused by one's CDL suspension. *Id.* However, despite these findings, the arbitrator still found largely in favor of Curley by reducing his suspension period.

As emphasized by the Cooperative, the arbitrator stated: "This Arbitrator has never seen a written rule establishing a 30–day disciplinary suspension in his over 30 years of practice, and such suspensions are usually only seen as the result of a settlement of a discharge case where the parties can agree discharge was too severe under the circumstances in a particular case." *Id.* The Cooperative focuses on this one statement throughout its briefs to argue that the arbitrator's sole basis for reducing the punishment from 30 days to one week was based on the arbitrator's personal experience in "his over thirty years of practice" that this punishment was too harsh. As such, the Cooperative argues that this statement clearly shows

that the arbitrator's decision could in no possible way be construed as drawing its essence from the CBA, and therefore the arbitrator's decision was based on his own brand of industrial justice requiring the arbitration award to be vacated. *See Misco,* 484 U.S. at 37–38, 108 S.Ct. 364.

While the arbitration award offers little reasoning to support its final conclusion, the Court can not say that the arbitrator's award fails to draw its essence from the CBA in light of the extreme deference given to such awards. *See Misco,* 484 U.S. at 38, 108 S.Ct. 364; *Teamsters Local Union 58,* 249 F.3d at 1093. As the Union has argued throughout the arbitration proceedings and in this case, the arbitrator found that the Cooperative's actions violated the CBA as the suspension was unjust and without proper cause. *See* CBA at Article VII, Section 1 (stating that a grievance includes "unjust treatment by a Supervisor"); Article VIII, Section 1 (stating that an employee may be disciplined only for "proper cause" or "other legitimate reason"). There is no question that the arbitrator's reduction of the suspension to one week directly conflicts with the notice regarding the revision of Policy E–5 requiring a 30 day suspension. However, there is also no dispute that the November 2002 notice regarding Policy E–5 was never a part of the CBA in question.[3] In

---

**2.** Although the arbitrator generally found that the policy requiring suspensions was reasonable in light of the goal of discouraging drunk driving and minimizing workplace disruption, he did not find that the amount of punishment mandated by the policy was reasonable. Thus, the arbitrator impliedly found that policy was unreasonable as applied in this case as the punishment was unjust considering the infraction at issue.

**3.** Citing *Inlandboatmens Union of Pacific v. Dutra Group ("Dutra"),* 279 F.3d 1075 (9th Cir.2002), the Cooperative argues that subject matters not included in a CBA are still covered by the CBA. The Court notes, however,

that the *Dutra* case only resolved the issue of the arbitrability of disputes arising out of side agreements such as settlement agreements. *Id.* at 1077–79. Specifically, the parties in *Dutra* had entered into a CBA, a dispute arose covered by the CBA arbitration clause, but the parties entered into a settlement agreement prior to formal arbitration. *Id.* Thereafter, the union alleged that the employer violated a provision of the settlement agreement and immediately filed suit in federal court. *Id.* The employer argued, however, that the dispute over the settlement agreement had to go to arbitration before it could be filed in federal court. *Id.* On appeal, the *Dutra* court agreed, and held that the dispute over the

addition, outside of the arbitrator's one statement regarding his personal experience in "over thirty years of practice," the arbitrator went on to clarify that the "record persuades the Arbitrator that Grievant's disciplinary suspension of thirty days was too severe and must be reduced to one week." *See* Cooperative's MSJ at Ex. I, p. 8. Further, the arbitrator concluded the "Grievant was not properly suspended for thirty days under the Agreement." *Id.* at 9. Thus, based on the record (as opposed to just his personal experience), the arbitrator acted within his authority when he concluded that the mandated punishment was too severe under the circumstances, and as such, was unjust and without proper cause. While the arbitrator certainly could have offered a more detailed analysis of the record which persuaded him that the suspension was unjust and without proper cause, it nonetheless appears that the arbitrator's decision drew its essence from the CBA. *See, e.g.,* CBA at Article VII, Section 1 (stating that a grievance includes "unjust treatment by a Supervisor"); Article VIII, Section 1 (stating that an employee may be disciplined only for "proper cause" or "other legitimate reason"); *Misco,* 484 U.S. at 38, 108 S.Ct. 364 ("as long as the arbitrator is even arguably construing or applying the contract and acting within the scope of his authority, that a court is convinced he committed serious error does not suffice to overturn [the arbitrator's] decision."); *Teamsters Local Union 58,* 249 F.3d at 1093 (same); *Hawaii Teamsters and Allied Workers Union, Local 996,* 241 F.3d at 1180–1181 (review of labor arbitration awards is "extremely deferential"); *Grammer,* 287 F.3d at 890 ("nearly unparalleled" deference is given to labor arbitration awards). Therefore, the arbitration award must be con-

firmed; the Cooperative's motion for summary judgment is denied, and the Union's motion for summary is granted.

## IV. *Conclusion*

Accordingly, IT IS HEREBY ORDERED as followed:

(1) The Cooperative's Motion for Summary Judgment (Doc. # 11) is **denied;**

(2) The Union's Cross–Motion for Summary Judgment (Doc. # 26) is **granted;**

(3) The Union's Motion to Dismiss (Doc. # 9) is **denied as moot;**

(4) This case is **dismissed with prejudice;**

(5) All other pending motions are **denied as moot;**

(6) The **Clerk of the Court shall enter judgment accordingly and close the file in this matter.**

---

settlement agreement had to go to arbitration as a threshold matter before it could be filed in federal court. *Id.*