147 F.3d 492
 158 L.R.R.M. (BNA) 2557, 135 Lab.Cas. P 10,183
 Dennis W. SCHOONOVER (96-3623), Plaintiff-Appellee/Cross-Appellant,
v.
CONSOLIDATED FREIGHTWAYS CORPORATION OF DELAWARE (96-3624)
and Local 24, International Brotherhood of Teamsters,
Chauffeurs, Warehousemen & Helpers of America (96-3683),
Defendants-Appellants/Cross-Appellees.
 Nos. 96-3624, 96-3683 and 96-2623.
 United States Court of Appeals,
Sixth Circuit.
 Argued Feb. 5, 1998.
Decided June 19, 1998.
Rehearing and Suggestion for Rehearing En Banc Denied Aug. 7, 1998.*
 
 William T. Whitaker, William T. Whitaker Co., Akron, Ohio, Sidney N. Freeman (briefed), McNamara, Freeman & Daily, Uniontown, OH, for Plaintiff-Appellee-Cross-Appellant.
 John W. McKenzie, Buckingham, Doolittle & Burroughs, Edward C. Kaminski (argued and briefed), for Consolidated Freightways Corp. of Delaware in Docket Nos. 96-3624 & 96-3683.
 Daniel B. Edelman (argued and briefed), Yablonski, Both & Edelman, Elizabeth Grdina (briefed), International Brotherhood of Teamsters, Legal Department, Washington, DC, Michael B. Hendler (briefed), Goldman & Rosen, Akron, Ohio, for Local 24 International Brotherhood of Teamsters, Chauffeurs, Warehousemen & Helpers of America in Docket Nos. 96-3623 and 96-3683.
 Before: MERRITT, KENNEDY, and BOGGS, Circuit Judges.
 MERRITT, J., delivered the opinion of the court, in which BOGGS, J., joined. KENNEDY, J. (pp. 496-98), delivered a separate dissenting opinion.
 OPINION
 MERRITT, Circuit Judge.
 
 
 1
 In this hybrid lawsuit brought under § 301 of the Labor Management Relations Act, 29 U.S.C. § 185, Defendants Consolidated Freightways Corporation and Teamsters Local 24 challenge the sufficiency of the evidence supporting a $850,000 jury verdict for Plaintiff Dennis Schoonover. This is a fact-intensive case in which the applicable legal standards are well settled. The basis for the defendants' appeal is that the District Court erroneously denied their motions for judgment as a matter of law. In a separate appeal, Schoonover contends the District Court improperly prevented him from presenting expert testimony on rebuttal as well as proof of pain, suffering, and punitive damages. Because the record contains ample evidence to support liability under § 301, we affirm the jury's verdict against the defendants. We also conclude the District Court's evidentiary decisions were within its discretion and therefore reject Schoonover's assignments of error.
 
 
 2
 Dennis Schoonover was a truck driver for Consolidated. He was discharged for intentionally destroying company property, specifically the brake pedal of the tractor he was driving to Milwaukee. On the day in question, the pedal broke off within twenty-five minutes of Schoonover's departure from the terminal. Consolidated claimed that Schoonover broke the pedal in retaliation against his supervisors for making him drive a "piece of junk." His supervisors believed that he had used a long tire iron (or "bud bar") to pry the pedal off so that he could drive a different rig to Milwaukee. They reached this conclusion by prying the pedal off another tractor in this manner. Schoonover, on the other hand, vehemently denied breaking the pedal. According to him, when he went to put on the brakes at the first major intersection on his route, the pedal was lying on the floorboard in two pieces. This story was corroborated by another truck driver who saw Schoonover perform an emergency stop at this intersection, which would be consistent with a normal brake failure. Schoonover speculated that the brake tie-down mechanism, which holds the pedal down while the driver checks the brake system, could have caused the pedal to break. Purportedly, the tie-down could have lodged under the pedal, causing it to snap off when a driver depressed the brake, or it may have caused cracks in the die-cast metal by repeatedly allowing the pedal to snap back into place after a driver disengaged it.
 
 
 3
 After a hearing, Consolidated fired Schoonover for "blatant and intentional abuse of company equipment." The union subsequently filed a grievance on Schoonover's behalf. Pursuant to the collective bargaining agreement between the Teamsters and Consolidated, the case went to arbitration before the Ohio State Grievance Committee. Although Consolidated presented expert testimony from a metallurgist who testified that the pedal was broken by upward pressure, Schoonover's union representatives chose not to rebut this evidence with their own expert testimony. The arbitration committee denied Schoonover's grievance and sustained his discharge.
 
 
 4
 Schoonover then filed this federal lawsuit against Consolidated for violating the collective bargaining agreement and Teamsters Local 24 for breaching its duty of fair representation. The case went to trial. At the close of Schoonover's case the District Court granted the defendants' motion for judgment as a matter of law on grounds that the complaint was time-barred. This Court reversed, holding that the six-month statute of limitations for hybrid § 301 actions did not begin to run until the arbitration panel's decision was reduced to writing. Schoonover v. Consolidated Freightways Corp. of Delaware, 49 F.3d 219 (6th Cir.1995). The case then proceeded to a second trial upon remand. At the conclusion of all the evidence, the defendants again moved for judgment as a matter of law, arguing Schoonover had failed to establish a prima facie case. The District Court denied the motion. The jury returned a verdict in favor of Schoonover and awarded him $850,000 in damages, finding Consolidated liable for 65 percent of the damages and the Teamsters Local for 35 percent. The defendants both renewed their motions for judgment as a matter of law, which the District Court also denied in a brief written opinion. The defendants' appeal challenges the District Court's denial of their motions for judgment as a matter of law before and after the verdict.
 
 
 5
 In order to overturn the jury's verdict on grounds that the District Court improperly denied them judgment as a matter of law, the defendants must show the evidence against Schoonover was so overwhelming that no one could reasonably find in his favor. Black v. Ryder/P.I.E. Nationwide, Inc., 970 F.2d 1461, 1470 (6th Cir.1992). In other words, unless this Court "is left with the definite and firm conviction that a mistake resulting in plain injustice has been committed," or unless the verdict "is contrary to all reason," we must affirm the jury's verdict. Id. On review, this Court cannot weigh the evidence, determine credibility, or substitute its judgment for that of the jury. Instead, we must view the evidence and all reasonable inferences in Schoonover's favor. Id.
 
 
 6
 At trial, Schoonover presented evidence which, if believed, suggested that his supervisors at Consolidated set him up and then fabricated evidence to assure his dismissal. He testified that prior to his incident one of his supervisors had threatened him, precipitating a number of unfounded warning letters against him. This served as the background to what Schoonover depicted as a concerted effort by his superiors to run him off. The evidence indicated that his supervisors were convinced he had broken the pedal out of spite and thus went in search of ways to confirm their suspicions. A number of witnesses testified that when the company reenacted the incident for the union, a supervisor had doctored the pedal to make it look like Schoonover could have easily broken the pedal with a bud bar in the short time he was gone from the terminal. In fact, Schoonover's attorney played the jury a videotape he stumbled upon in discovery, which showed several Consolidated representatives struggling for over two hours to break an identical pedal. Apparently these representatives discovered that the die-cast metal pedal could only be broken with the leverage provided by a wooden block, which Schoonover did not have in his cab. Moreover, although the testimony of Consolidated's metallurgist appeared invulnerable at the arbitration hearing, the trial disclosed that Consolidated had only asked the expert to determine the direction of the break, not its possible causes. Consolidated's own expert admitted at trial that the pedal could have broken either from a prying force applied from above or from an object, such as the tie-down mechanism, lodged underneath. In addition, Schoonover's expert metallurgist presented trial testimony that the pedal contained structural defects which the company's expert had overlooked.
 
 
 7
 Schoonover also presented evidence suggesting that the union never took his grievance seriously and thus provided him inadequate representation at his grievance committee hearing. His theory of the case was that after Consolidated presented its doctored reenactment of the incident to the union, his union representatives gave up on his grievance. One of the union officials involved in the investigation testified that the reenactment was so convincing that the union never confirmed the company's version of events or even tried to pry a pedal off with a bud bar. Although his union delegates knew that the company had hired a metallurgist to provide expert testimony on the decisive issue at the hearing, they did not hire their own expert or even interview the company's expert. In fact, Schoonover's representative at his discharge hearing testified that cases involving destruction of company property are the hardest to resolve and often turn on expert testimony. This representative also admitted that the union could and should have brought a truck to the hearing to show the arbitrators how difficult it is to actually break a pedal with a bud bar. Furthermore, Schoonover showed that he provided the union with a list of drivers who had experienced similar incidents, but the union did not pursue these leads when it learned the incidents occurred in tractors made by a different manufacturer. Two of these drivers provided trial testimony that the die-cast metal pedals in their trucks were similar to the one in Schoonover's truck and that the metal had either cracked or broken in half. Ultimately, the court admitted substantial evidence suggesting the union's representation of Schoonover at the arbitration hearing was perfunctory. Testimony revealed that the union only met with Schoonover once the Sunday before the hearing, that its presentation at the hearing only lasted fifteen minutes, and that its representatives apparently made little effort to rebut the company's evidence. This apparently left Schoonover to ask the grievance committee merely to believe his side of the story.
 
 
 8
 After weighing this evidence, the jury found that Consolidated breached the collective bargaining agreement and that the Teamsters Local breached its duty of fair representation. In a special verdict, the jury found Consolidated's termination of Schoonover was a breach of its contract with the union. Further, the jury determined the Teamsters Local breached its duty of fair representation to Schoonover in the grievance and arbitration procedures. Finally, the jury decided the union's breach tainted the hearing in such a way that the arbitration committee would have reached a different result without the breach. These findings specifically trace the requirements for liability in a hybrid § 301 case. See Black v. Ryder/P.I.E. Nationwide, Inc., 15 F.3d 573, 585 (6th Cir.1994). On the defendants' requests for postjudgment relief, the District Court concluded the evidence was sufficient and found the jury's verdict reasonable.
 
 
 9
 Viewing the evidence in the light most favorable to Schoonover, we believe the jury's verdict was is not "contrary to all reason" or based on a "mistake resulting in plain injustice." See Black, 970 F.2d at 1470. In hybrid § 301 cases, the focus is on "whether ... the employer breached the contract and whether there is substantial reason to believe that a union breach of duty contributed to the erroneous outcome of the contractual proceedings." Hines v. Anchor Motor Freight, Inc., 424 U.S. 554, 568, 96 S.Ct. 1048, 47 L.Ed.2d 231 (1976). This jury could have reasonably concluded that Consolidated breached the contract when its employees doctored the pedal they used to reenact the incident for the union. The videotape, showing that the pedal was not as easy to break as Consolidated made it appear, was strong circumstantial evidence for Schoonover's theory that his supervisors set him up. The jury could have also found that the Teamsters Local breached its duty of fair representation to Schoonover in the way it handled his grievance. Refusing to call a metallurgist, when the union representatives knew such testimony was crucial; failing to investigate similar incidents involving broken pedals, when that evidence could have convinced the arbitrators that Schoonover's incident was not as unusual as it appeared; crediting Consolidated's reenactment of the incident, when an independent investigation would have revealed that Schoonover could not have broken the pedal with only a bud bar in the short time he was gone from the terminal; and neglecting to bring a truck to the hearing, when its presence would have allowed the grievance committee to test the company's version of the facts for themselves, are all substantial reasons which, in combination, would justify the jury's finding that the union's representation of Schoonover was "arbitrary, discriminatory, perfunctory, or in bad faith." Apperson v. Fleet Carrier Corp., 879 F.2d 1344, 1355 (6th Cir.1989); see also Vaca v. Sipes, 386 U.S. 171, 190, 87 S.Ct. 903, 17 L.Ed.2d 842 (1967). Without these mistakes, it is certainly conceivable that the grievance committee would have decided Schoonover's grievance differently.
 
 
 10
 Our review of the record has failed to produce any definite or firm conviction that the defendants have suffered any injustice from the verdict. This record contains ample evidence from which the jury could have concluded that Consolidated breached the collective bargaining agreement, that the Teamsters Local breached its duty of fair representation, and that this breach tainted the outcome of the hearing before the grievance committee. We conclude the evidence sufficiently supports liability in a hybrid § 301 case, see Black, 15 F.3d at 585, and therefore affirm the jury's verdict. As for Schoonover's cross-appeal of the decision to exclude his expert's testimony on rebuttal and his evidence of punitive damages, we conclude the District Court acted within its discretion. See Benedict v. United States, 822 F.2d 1426, 1428-29 (6th Cir.1987); Wilson v. Int'l Bhd. of Teamsters, 83 F.3d 747, 754-55 (6th Cir.1996). Accordingly, the judgment of the District Court is affirmed.
 
 
 11
 KENNEDY, Circuit Judge, dissenting.
 
 
 12
 Because the evidence, even in the light most favorable to plaintiff, does not permit a finding that the Union acted "in such a discriminatory, dishonest, arbitrary or perfunctory fashion as to breach its duty of fair representation," the standard set in DelCostello v. Int'l Brotherhood of Teamsters, 462 U.S. 151, 164, 103 S.Ct. 2281, 76 L.Ed.2d 476 (1983), I respectfully dissent.
 
 
 13
 There are three distinct ways in which a union can breach the duty of fair representation: by taking actions that are arbitrary, discriminatory or in bad faith. Black v. Ryder/P.I.E. Nationwide, Inc., 15 F.3d 573, 584 (6th Cir.1994). Negligence fails to satisfy any prong of this tripartite standard. Dushaw v. Roadway Express, Inc., 66 F.3d 129, 133 n. 1 (6th Cir.1995) (citing United Steelworkers of America v. Rawson, 495 U.S. 362, 372-73, 110 S.Ct. 1904, 109 L.Ed.2d 362 (1990)). A plaintiff seeking to establish a union's breach of the duty of fair representation is met with an "onerous burden." Black, 15 F.3d at 585. A union's action will be found arbitrary only if "the union's behavior is so far outside a 'wide range of reasonableness'... ... as to be irrational." (Air Line Pilots Ass'n, Int'l v. O'Neill, 499 U.S. 65, 67, 111 S.Ct. 1127, 113 L.Ed.2d 51 (1991))[1] A plaintiff also must show that any breach more likely than not tainted the grievance procedure, substantially affecting the outcome. Dushaw, 66 F.3d at 132 (citing Black, 15 F.3d at 585). The record reflects that the Union investigated the brake pedal incident; followed leads as to other brake pedal fractures; interviewed and took the statement of the only eyewitness to the incident; and pursued, considered and tested theories consistent with plaintiff's denial that he did not intentionally break the pedal.
 
 
 14
 The majority finds that without the mistakes which the union representative made, the jury could find that the grievance committee would have decided Schoonover's grievance differently. If the Union were held to a negligence or a malpractice standard, I would agree. But union representatives are not lawyers. They do not have the advantage of discovery procedures. At most, the Union's failures were negligence or bad judgment, neither of which is enough to constitute the breach of duty of fair representation. Walk v. P*I*E Nationwide, Inc., 958 F.2d 1323, 1326 (6th Cir.1992) ("[S]imple negligence or mere errors in judgment will not suffice.")
 
 
 15
 The majority points to four deficiencies in the Union's handling of the grievance to support the jury's verdict. First, the Union's failure to have the pedal examined by a metallurgist. The Union made what could now appear to be the erroneous decision to refrain from hiring its own expert to discern how the pedal was broken. The Union had had two prior experiences in which consulting an expert had worked to the detriment of an employee. The Union could not secretly examine the pedal. The Union decided to base its position at the grievance proceeding on plaintiff's denial and to argue that Consolidated could not prove plaintiff intentionally fractured the brake pedal. The Union's decision may well have been a mistake but it was neither perfunctory nor arbitrary. It was based on prior unsatisfactory experiences with experts. The expert's report merely stated that the fracture was caused by an upward force, a conclusion with which both experts at trial agreed. The decision not to have the brake pedal examined by a metallurgist cannot be said to be outside the range of reasonableness.
 
 
 16
 The second reason given by the majority is "failing to investigate similar incidents." Plaintiff provided the Union with information about incidents in other locations where brake pedals failed. The Union contacted local union presidents in those locations as well as various drivers. It learned that the failures were in Freightliner trucks, which have different brake systems and were due primarily to flaws in floorboard and pedal mountings.[2] Even with all the discovery, the trial did not produce similar incidents.
 
 
 17
 Third, the majority states that the Union should not have credited Consolidated's re-enactment of the incident, but should have made an independent investigation; that is, tried to break a pedal with a bud bar itself. While in hindsight that should have been done, the union representatives had observed Sarne break a similar pedal with a bud bar. While this was not the first time Sarne had tried to break a pedal and he had had trouble breaking one until he learned where to put the bud bar, he broke this one on his first attempt in the union representative's presence. While they were unaware of his earlier practice attempts, still he did break it with ease. The union representatives had tried, without success, to see if the tie back bar could cause the pedal to break. While the Union might have established that it was difficult to break the pedal with a bud bar, there is no suggestion in the record that it cannot be done. The Union did not have the ready access to trucks for destructive tests that the employer did. It did not own trucks on which it could experiment at will.
 
 
 18
 Finally, the majority finds the Union breached its duty of fair representation by not bringing a truck to the hearing where the grievance committee could test the company's version of the facts. In the earlier demonstration, the union representatives had observed a bud bar break the pedal. Whether to permit the grievance committee to conduct its own experiment or not seems to me to be a judgment call well within a wide range of reasonableness. The grievance committee members were all familiar with trucks.
 
 
 19
 Because the record does not support the jury's verdict that Local 24 acted arbitrarily, discriminatorily or in bad faith, and outside "a wide range of reasonableness," I believe the District Court erred in not granting the Union's motion for judgment as a matter of law.
 
 
 
 *
 Judge Kennedy would grant rehearing for the reasons stated in her dissent
 
 
 [1]
 Plaintiff argues that O'Neill's "wholly irrational" standard is inapplicable to grievance proceedings because O'Neill involved contract negotiations. We rejected this argument in Walk v. P*I*E* Nationwide, Inc., 958 F.2d 1323, 1326 (6th Cir.1992). (O'Neill's standards apply to both contract negotiations and grievance proceedings)
 
 
 [2]
 Had the Union investigated Navistar brake failures further, it would have learned that Navistar had no record of any similar fracture problem with any other International pedals. While plaintiff at trial produced evidence of other brake failures, he produced no evidence of any other similar failure of an International pedal