NOT RECOMMENDED FOR PUBLICATION
File Name: 08a0786n.06
Filed: December 24, 2008

No. 08-1083

UNITED STATES COURT OF APPEALS
FOR THE SIXTH CIRCUIT

| | | |
|---|---|---|
| JAMES KELSEY, | ) | |
| | ) | |
| Plaintiff-Appellant, | ) | |
| | ) | ON APPEAL FROM THE UNITED |
| v. | ) | STATES DISTRICT COURT FOR THE |
| | ) | EASTERN DISTRICT OF MICHIGAN |
| FormTech INDUSTRIES and | ) | |
| WEST SIDE LOCAL 174, | ) | |
| | ) | OPINION |
| Defendants-Appellees. | ) | |

**Before: MARTIN and KETHLEDGE, Circuit Judges; and CARR, District Judge.**[*]

**JAMES G. CARR, DISTRICT JUDGE.** Plaintiff James Kelsey, a former Metaldyne

Precision Forming ["Metaldyne"] employee and member to a collective bargaining unit represented

by West Side Local 174 ["Local 174" or "Union"], appeals from the district court's grant of

summary judgment in favor of defendants FormTech Industries [1] ["FormTech"] and Local 174.

Kelsey brings a § 301 hybrid claim under the Labor Management Relations Act of 1947 ["LMRA"],

---

[*]

The Honorable James G. Carr, Chief Judge of the Northern District of Ohio, sitting by designation.

[1]

In March 2006, defendant FormTech purchased Metaldyne's plant and hired its workers. Metaldyne is not party to this lawsuit.

1

[29 U.S.C. § 185](#), alleging that the Union breached its duty of fair representation and that his former employer breached a collective bargaining agreement [CBA].

For the reasons that follow, we **AFFIRM** the district court's grant of summary judgment in favor of the defendants.

## Background

On October 29, 2004, while employed by Metaldyne as a forklift or "hi-lo" operator, Kelsey drove his hi-lo into a forklift operated by his co-worker. After allowing his co-worker to drive away, Kelsey hit him with his forklift for a second time. Kelsey yelled expletives throughout the incident and shouted that salaried employees were not allowed to drive forklifts.

In a conversation with the Metaldyne foreman later that day, Kelsey admitted what he had done and explained that he did it, essentially, because he felt like it. The foreman then sent Kelsey home. Kelsey asserts that he remembers neither the incident nor his conversation with the foreman. As part of Metaldyne's investigation, Kelsey took a drug test that same day and tested positive for opiates. Metaldyne terminated Kelsey's employment on November 3, 2004.

Soon after, a doctor diagnosed Kelsey with Neurocardiogenic Syncope, a medical condition characterized by the episodic reduction of blood circulation to the brain. Patients with Neurocardiogenic Syncope experience fatigue, lightheadedness, dizziness, palpitations, nausea, sweating, aches and fainting. Although this condition does not cause threats or violence, Kelsey contends that it caused his violent behavior.

Per Kelsey's request, Local 174 filed a grievance contending that Metaldyne discharged Kelsey without just cause. Metaldyne denied the grievance, reasoning that Kelsey's conduct could

have severely injured or killed a fellow employee. Metaldyne also noted that it did not receive assurance that a similar incident would not happen again.

Local 174's Financial Secretary-Treasurer, Jim Burton, investigated the grievance by, among other things, interviewing eyewitnesses, discussing events with relevant parties and reviewing the CBA. He also met with Kelsey on at least ten occasions, read his medical record and learned about Neurocardiogenic Syncope. Based on his investigation, Burton concluded that Kelsey's medical condition did not excuse his assault. Local 174, therefore, withdrew the grievance, rendering Metaldyne's decision final and binding. Kelsey received notice about this withdrawal on April 29, 2005.

Kelsey initiated an internal grievance procedure and appealed his case to the International Executive Board [IEB]. Under IEB policy, an employee with high seniority should have his grievance processed unless compelling evidence indicates that it cannot be won. The IEB concluded that such evidence did not exist in Kelsey's case, and directed Local 174 to reinstate the grievance.

Pursuant to this order, the Union asked FormTech to reinstate the grievance but FormTech refused. Local 174 then asked FormTech to reconsider and arbitrate the grievance to promote the "good bargaining relationship" between Local 174 and FormTech. FormTech, again, refused. The Union informed Kelsey that they tried, albeit unsuccessfully, to reinstate the grievance and exhausted all options.

Kelsey filed this lawsuit on March 28, 2007, alleging a § 301 hybrid claim. He asserted that his former employer breached its CBA by discharging him and Local 174 breached its duty of fair representation by withdrawing the grievance and failing to persuade FormTech to reinstate it. FormTech and Local 174 filed motions for summary judgment, which the district court granted. The

3

court found Kelsey's claims against FormTech to be time-barred. It also found Kelsey's first claim against Local 174 to be time-barred and his first and second claims to be without merit.

## Discussion

This Court reviews a district court's grant of summary judgment *de novo*. *Hinchman v. Moore*, 312 F.3d 198, 201 (6th Cir.2002).

To prevail on a hybrid claim under § 301 of the LMRA, a plaintiff must show that his employer breached its CBA and union breached its duty of fair representation. *DelCostello v. Int'l Bhd. of Teamsters*, 462 U.S. 151, 164-65 (1983). A failure to prove either claim is fatal to a § 301 suit. *Garrish v. UAW*, 417 F.3d 590, 594 (6th Cir.2005) ("If both prongs are not satisfied, Plaintiffs cannot succeed against any Defendant.").

### A. Duty of Fair Representation

Kelsey asserts that Local 174 breached its duty of fair representation by: 1) withdrawing the grievance; and 2) failing to convince FormTech to reinstate the withdrawn grievance. We disagree. Because Kelsey cannot prove that Local 174 breached its duty of fair representation, summary judgment is appropriate. [2]

---

[2]

By upholding the district court's determination that Local 174 did not breach its duty of fair representation, we find that Kelsey's § 301 claim fails on the merits. We, therefore, have no reason to examine the additional arguments raised by the defendants. *See DelCostello*, *supra*, 462 U.S. at 164-65.

For the record, however, the defendants argue that Kelsey's claim against FormTech is barred by a six-month statute of limitations. They contend that Kelsey's first claim for breach of the Union's duty of fair representation fails because it is time-barred, without merit and subject to a good faith defense. Finally, the defendants argue that Kelsey's second claim against the Union is barred for failure to exhaust mandatory internal union appeals and is without merit.

4

The duty of fair representation ensures that unions represent employees "adequately . . . honestly and in good faith." *Air Line Pilots Ass'n Int'l v. O'Neil*, 499 U.S. 65, 75 (1991). To establish breach of this duty, a plaintiff must show that the union's "conduct toward a member of the collective bargaining unit is arbitrary, discriminatory, or in bad faith." *Vaca v. Sipes*, 386 U.S. 171, 190 (1967). "[A] union's actions are arbitrary only if, in light of the factual and legal landscape at the time of the union's actions, the union's behavior is so far outside a wide range of reasonableness as to be irrational." *Air Line Pilots*, *supra*, 499 U.S. at 67 (internal citations omitted). "Simple negligence or mere errors in judgment will not suffice." *Walk v. P*I*E Nationwide, Inc.*, 958 F.2d 1323, 1326 (6th Cir.1992).

Under this duty, "a union may not ignore a *meritorious* grievance or process it in a perfunctory fashion." *Vaca, supra*, 386 U.S. at 191 (emphasis provided). Unions are not, however, obligated to prosecute grievances that they find to be meritless. *Williams v. Molphus*, 171 F.3d 360, 366-67 (6th Cir.1999) ("[A] union does not have to process a grievance that it deems lacks merit, as long as it makes that determination in good faith."); *Walters v. Local Union No. 337*, 7 F.Supp.2d 885, 892 (E.D.Mich. 1998) ("[The] Union is not under an obligation to pursue arbitration when it finds a grievant guilty of serious misconduct.").

**1. Local 174's Decision to Withdraw The Grievance**

Local 174's decision to withdraw the grievance was not arbitrary, discriminatory or made in bad faith. Prior to making any determination, Burton conducted a thorough investigation where he met with Kelsey on at least ten occasions, read his medical records and learned about Neurocardiogenic Syncope. Such actions illustrate Burton's attempt to gather sufficient evidence to represent Kelsey.

5

By his investigation's conclusion, however, Burton believed that just cause supported Metaldyne's discharge decision and Kelsey's medical diagnosis did not provide a legitimate defense. Burton determined that Kelsey's grievance lacked merit, a decision absolving Local 174 of its obligation to continue to process the grievance. *See Williams, supra*, 171 F.3d at 366-67.

Kelsey contends that Burton was biased against him, resulting in a faulty investigation. Kelsey supports this contention by pointing to his conversation with Burton two weeks before the investigation in which Burton told Kelsey that he would never work for FormTech again. Given the overwhelming weight of the evidence supporting the district court's ruling, that comment cannot be deemed to manifest bias on Burton's part.

As noted by the district court, Burton's comment is not inherently biased. At most, it is an ambiguous prediction and assessment of the situation given the facts before him. Despite Kelsey's failure to provide evidence sufficiently supporting his claim, Burton continued to conduct his investigation and process the grievance. Local 174's ultimate decision to withdraw the grievance, based on the result of Burton's investigation, was reasonable, and far from arbitrary.

Kelsey claims that Burton's actions were "perfunctory," just as the union's were in *Schoonover v. Consolidated Freightways Corp. of Delaware*, 147 F.3d 492, 495 (6th Cir.1988). In *Schoonover*, however, the union representative only met with the employee once before the arbitration, never gathered scientific evidence and presented a very short and ineffective presentation at the grievance hearing. *Id.* Given Burton's extensive investigation, this case is readily distinguishable.

## 2. Local 174's Failure to Reinstate The Grievance

Local 174 made a diligent, good faith effort to reinstate Kelsey's grievance and therefore did not breach its duty of fair representation. Although the CBA afforded no opportunity to reinstate the grievance, Local 174 still fought on Kelsey's behalf. The Union notified FormTech of its intent to submit the grievance to arbitration, but FormTech refused to reinstate it. The Union asked FormTech to do so to "promote and advance" their relationship and, in an attempt to reach a deal, even suggested a waiver of back pay liability. FormTech, again, refused.

Local 174 had no duty or ability to do more. It truly exhausted its options. The Union's actions, consequently, were far from discriminatory, arbitrary or made in bad faith.

We conclude that Local 174 did not breach its duty of fair representation, a determination that sufficiently precludes Kelsey's successful § 301 hybrid claim. *See DelCostello*, *supra*, 462 U.S. at 164-65.

## Conclusion

For the foregoing reasons, we **AFFIRM** the district court's grant of summary judgment in favor of the defendants.